IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARSHA KINE, )<br>on behalf of Z.E.K., minor )<br>     )<br>     Plaintiff,     )<br>     )<br>     v.     )<br>     )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>     )<br>     Defendant.     ) | CIVIL ACTION NO. 2:10cv751-MEF<br>(WO) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

Plaintiff Marsha Kine filed this lawsuit on behalf of her son, Z.E.K.,[1] to review a final judgment by Michael J. Astrue, Commissioner of Social Security ("Commissioner"),[2] in which he determined that Z.E.K. is not "disabled" and, therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing on November 24, 2008 before an Administrative Law Judge ("ALJ"). At the conclusion of the November 24, 2008 hearing in this case, the ALJ, Hon. Tracy S. Guice, determined that the record required further

---

[1] Pursuant to the E-government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, Z.E.K.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commisdoner of Social Security.

development. (R. 84). After further development of the record, the ALJ held a second hearing on August 4, 2009. (R. 24). Following the second hearing, the ALJ denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Magistrate Judge recommends that the Commissioner's decision denying Z.E.K. supplemental security income benefits be affirmed.

## II. STANDARD OF REVIEW

An individual under 18 years of age is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 1382c(a)(3)(C)(I). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.

2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.

3. If the impairment is severe, the Commissioner determines whether the

2

>impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has '"marked" limitations in two of the domains [above], or an "extreme" limitation in one domain.'" *Shinn*, 391 F.3d at 1279 (quoting 20 C.F.R. § 416.926a(d)).

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as

3

adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute ... [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).  The court must, however, conduct an "exacting examination of the [Commissioner's] conclusions of law." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

### III.  ISSUES

**A.  Introduction.**  Z.E.K. was born on June 11, 1992.  Therefore, he was seventeen years old on October 15, 2009, the date that ALJ issued an opinion in this case.  Z.E.K. has low scores on IQ tests (two scores of 70 and one score of 83).  Z.E.K. has a learning disability and is in special education classes in high school.  He also suffers from headaches due to vision problems, and he has anemia.

Z.E.K. contends that he is disabled as a result of his low IQ, learning disability, headaches, and anemia. Following the hearing, the ALJ found that Z.E.K. was not engaged in substantial gainful activity, and had the following severe impairments: borderline intellectual functioning and learning disability.  (R. 11).  The ALJ found that Z.E.K.'s headaches were a non-severe impairment because "there is no evidence in the record to support the severity of the headaches alleged" and because "the headaches were resolved with prescription glasses."  (R. 11).  The ALJ also determined that Z.E.K.'s anemia was not

a severe impairment on grounds that his "allegations of anemia were not supported by the evidence in the record." (R. 11). The ALJ further concluded that Z.E.K. does not have an impairment or combination of impairments that meet or medically or functionally equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (R. 11-23). The ALJ determined that Z.E.K. is not disabled. (R. 23).

    **B. Plaintiff's Claims.** As stated by the plaintiff, the primary issues are as follows:

1. Whether the ALJ erred by failing to consider Z.E.K.'s application for SSI benefits under the legal standards applicable to the claim of an adult (Pl's Br. at 8-10);

2. Whether the ALJ erred by failing to find Z.E.K.'s anemia to be a severe impairment (Pl's Br. at 10-11);

3. Whether the ALJ erred by failing to find Z.E.K.'s headaches to be a severe impairment (Pl's Br. at 10-11);

4. Whether the ALJ erred in relying on an IQ test that was over two years old, failing to order a further consultative exam, and failing to develop the record by "failing to seek clarification from a Consultative Examiner if the ALJ was unclear regarding the examiner[']s test results." (Pl's Br. at 12);

5. Whether the ALJ erred by failing to show good cause for rejecting the opinion of a treating physician (Pl's Br. at 7-8);

6. Whether the ALJ failed to state explicit and adequate reasons for discounting the testimony of Z.E.K. and his mother (Pl's Br. at 11-12).

7. Whether the ALJ erred in finding that Z.E.K.'s level of adaptive functioning did not support a finding of disability (Pl's Br. at 11).

### IV. Discussion

**A. Whether the ALJ erred by failing to consider Z.E.K.'s application for SSI benefits under the legal standards applicable to claim of an adult.**

Z.E.K. contends that the ALJ erred by failing to consider his application for SSI

benefits in accordance with the standards governing SSI claims brought by adults. However, at the August 4, 2009 hearing in this case, Z.E.K.'s attorney argued as follows:

> ATTY: Okay, correct me if I'm wrong, Your Honor . This is a child's case--
>
> ALJ: Correct.
>
> ATTY: --and we're not evaluating this claimant under adult standards of whether or not he can work in the workforce. If that were the case we would have a VE to offer testimony.
>
> ....
>
> ATTY: Okay, I feel like at this point I just need to make an objection for the record because again this is not an adult's case. If we were trying this as an adult case we would be applying adult standards, we would have a vocational expert here to offer testimony, and the rules although similar are different.
>
> ALJ: I understand what you're saying and I think your objection is well placed.

(R. 42-43).

It is undisputed that Z.E.K. was seventeen years old a the time the ALJ issued an opinion in his case. Therefore, as Z.E.K.'s attorney argued at the hearing before the ALJ, it would have been inappropriate for the ALJ to evaluate Z.E.K.'s claim under the standards applicable to disability the claims of adults. *See* 20 CFR § 416.902 ("Adult means a person who is age 18 or older. Child means a person who has not attained age 18."). *Cf.* 20 CFR § 416.924(f) ("If you attain age 18 after you file your disability application but before we make a determination or decision. [sic] For the period during which you are under age 18, we will use the rules in this section [for determining disability of children]. For the period starting with the day you attain age 18, we will use the disability rules we use for adults who

file new claims."). The ALJ did not err in evaluating Z.E.K.'s claim under the standards applicable for determining the disability of a child.

**B.     Whether the ALJ erred by failing to find Z.E.K.'s anemia to be a severe impairment.**

Z.E.K. argues that ALJ erred by failing to find Z.E.K.'s anemia to be a severe impairment. In August 2008, Z.E.K. wanted to play football and began attending football practice. (R. 72). However, Z.E.K. could not complete running drills because he tired easily. (R. 72-73). Therefore, Z.E.K.'s mother took Z.E.K. to the doctor. (R. 73). The doctor found that Z.E.K. was 6'1" tall and weighed 281 pounds. (R. 73). He also found that Z.E.K. had anemia, and he prescribed medicine to address the condition. (R. 73, 284). Z.E.K. testified that the pills helped with his symptoms of feeling tired. (R. 67). Z.E.K.'s mother testified that he could not play football that year because of the anemia problem. (R. 83).

A severe impairment is one that is more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). The record contains no indication that Z.E.K.'s anemia, either alone or in combination with other impairments, has any effect on Z.E.K.'s functional limitations and abilities other than his ability to participate in running drills with the high school football team. In addition, Z.E.K. testified that medication "helped" with his problem of feeling tired. (R. 67). Under the circumstances, substantial evidence supports the ALJ's finding that Z.E.K.'s anemia is not a severe impairment.

**C.    Whether the ALJ erred by failing to find Z.E.K.'s headaches to be a severe impairment.**

Z.E.K. argues that the ALJ erred by failing to find his headaches to be a severe impairment. Z.E.K.'s medical records do contain indications that he complained of headaches. (R. 281, 286, 320). Z.E.K.'s mother testified that Z.E.K. had migraines "regularly until [she] took him to the eye doctor," who diagnosed the headaches as the result of eye strain and prescribed glasses. (R. 74, 281). There is no evidence in the record, however, to support the conclusion that Z.E.K.'s headaches, either alone or in combination with other impairments, cause "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Therefore, the record supports the ALJ's finding that Z.E.K.'s headaches constitute "a nonsevere impairment." (R.11); 20 C.F.R § 416.924(c) ("If ... your impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, we will find that you do not have a severe impairment(s).").

**D.    Whether the ALJ erred by relying on an IQ test that was over two years old, failing to order a further consultative exam, and failing to develop the record by "failing to seek clarification from a Consultative Examiner.**

Z.E.K. argues that the ALJ erred in relying on an IQ test that was over two years old, failing to order a further consultative exam, and failing to develop the record by "failing to seek clarification from a Consultative Examiner if the ALJ was unclear regarding the examiner[']s test results." (Pl's Br. at 12). The medical record contains the results of two IQ tests: a January 8, 2009 IQ score of 70 on a test administered by Dr. Donald Blanton, a

consulting psychologist to whom the Commissioner referred Z.E.K. (R. 298-300), and an April 29, 2009 overall IQ score of 83 on a test administered by Z.E.K.'s treating psychologists at the University of Alabama Spark's Clinic (R. 317). In addition, Z.E.K.'s school record contains the result of a September 2006 IQ test on which Z.E.K. obtained an overall IQ score of 70.

The ALJ mentioned the 2006 IQ score in her opinion (R. 14), but based her findings on the two tests administered in 2009, and on expert testimony primarily regarding the two most recent scores. (R. 11-12; 16-18; R. 17("[T]he undersigned gives some weight to both [the Sparks and Blanton] psychological assessments, finding that they both support a conclusion that the claimant has borderline intellectual functioning; however, it is clear that the claimant does not meet the criteria for mental retardation."))._3_ Moreover, to the extent that the ALJ may have relied to any extent on the 2006 IQ score of 70, Z.E.K. has failed to identify any prejudice resulting from consideration of that score. The 2006 score is consistent with the lower of the most recent IQ scores and, if anything, is favorable to Z.E.K. Accordingly, the court finds no indication that the ALJ improperly relied on an IQ score that was over two years old, or that any such reliance justifies reversal. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error standard to an ALJ's decision in a social security case).

---

[3] Z.E.K. further accuses the ALJ of "referring to only one IQ test score in the record" when "there were in fact three such tests." (Pl's Br. at 12). This argument is frivolous. The ALJ's opinion clearly discusses all three tests and relies primarily on the two tests that were administered in 2009. (R. 11-12; 14; 16-18).

Z.E.K. also argues that the ALJ should have ordered further consultation regarding his IQ scores because he scored an 83 on an IQ test administered on April 29, 2009 test *after* he scored a 70 on an IQ test in a DDS consultative evaluation on January 8, 2009. Z.E.K. further contends that the ALJ "erred in failing to seek clarification from a Consultative Examiner or further testing ... if the ALJ was unclear regarding the examiners test results or what they mean in context with [Z.E.K.'s] alleged adaptive functioning skills." (Pl's Br. at 12). This argument is frivolous. At the August 4, 2009 hearing in this case, both Z.E.K.'s attorney and the ALJ extensively questioned a medical expert, Dr. Nancy Sack, regarding the January 2009 IQ score of 70, the April 2009 IQ score of 83, and the significance of those scores in light of Z.E.K.'s adaptive functioning. (R. 32-45, 53-54). The ALJ clearly did not fail to develop the record as to Z.E.K.'s IQ, the interpretation of his IQ scores, or the significance of those scores in light of his adaptive functioning.

E.  **Whether the ALJ erred by failing to show good cause for rejecting the opinion of a treating physician; whether the ALJ failed to state explicit and adequate reasons for discounting the testimony of Z.E.K. and his mother; and whether the ALJ erred in finding that Z.E.K.'s level of adaptive functioning did not support a finding of disability**

Z.E.K. argues that the ALJ erred by failing to show good cause for rejecting the opinion of "treating physicians," specifically the report from the University of Alabama at Birmingham's Spark's Clinic indicating an IQ score of 83 and a report by the Commissioner's own consultative examiner, Dr. Blanton, indicating an IQ score of 70. The Sparks report concluded that Z.E.K.'s "cognitive skills fall in the Low Average range with

10

Well Below Average Verbals skills and Average Performance skills. [Z.E.K.] exhibits global delays across all academic areas. More specifically, his skills in Reading, Math, and Written Expression are in the Low to Very Low range and reflect a significant difference when compared to his IQ. Thus, [Z.E.K.] meets criteria for diagnosis of Mathematics Disorder, Reading Disorder, and Disorder of Written Expression." (R. 314). Dr. Blanton similarly concluded "In summary, [Z.E.K.] ... scored in the bottom of the borderline range of intelligence on this administration of the WAIS-IV. He has apparently had learning problems throughout his academic career but no other emotional problems were noted." (R. 300).

The ALJ did not reject either of the Blanton or the Sparks reports, but credited both of them (R. 12, 16-17; R. 17 ("In considering the opinion evidence, the undersigned gives some weight to both [the Sparks and Blanton] psychological assessments, finding that they both support a conclusion that the claimant has borderline intellectual functioning; however, it is clear that the claimant does not meet the criteria for mental retardation.")). Moreover, consistent with both reports, the ALJ ***did find*** that Z.E.K. had the severe disabilities of "borderline intellectual functioning and learning disability." (R. 11).

However, according to Z.E.K., the Sparks and Blanton reports found that Z.E.K. had "severe impairments." (Pl's Br. at 8-9). Z.E.K. does not identify the portions of the reports that allegedly contain findings of "severe impairments." On the whole, Z.E.K. is essentially arguing that, standing alone, his IQ scores establish a disability. As a matter of law, they do not. As the ALJ recognized, IQ scores of 70 and/or 83, without more, do not establish that

11

a claimant meets a listing in 20 CFR Pt. 404, Subpt. P, App. 1, or that the claimant has an impairment or combination of impairments that functionally or medically meets a listing. "'[A] valid IQ score need not be conclusive of mental retardation where the score is inconsistent with other evidence on the claimant's daily activities and behavior.'" *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, Slip Copy, 2011 WL 6091196 (11th Cir December 8, 2011) (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.1992)); *see also* 20 CFR § 416.926a(e)(4)(I) ("[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."); 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05 (defining mental retardation as "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;" or "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."); 20 CFR Pt. 404, Subpt. P, App. 1, § 12.02 (listing for Organic Mental Disorders); 20 CFR Pt. 404, Subpt. P, App. 1, § 12.03 (listing for psychotic disorders).

Further, the ALJ thoroughly and thoughtfully considered the extensive record of Z.E.K.'s high adaptive functioning, along with his IQ scores, in determining that Z.E.K. is not disabled. (R. 11-23). In so doing, the ALJ set forth detailed reasons for every aspect of

her opinion, including the weight given to the testimony of Z.E.K. and his mother. The ALJ applied the correct legal standards, and the record supports her determination that Z.E.K.'s adaptive functioning does not support a finding of disability.

## V. Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that the decision of the Commissioner be **AFFIRMED** and that this case be **DISMISSED**.

It is further

**ORDERED** that the parties are **DIRECTED** to file any objections to the Recommendation on or before February 27, 2012. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982). *See Stein v.*

13

*Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 13th day of February, 2012.

                                        /s/Charles S. Coody
                                 CHARLES S. COODY
                                 UNITED STATES MAGISTRATE JUDGE